**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C. L. FRANK, INC., Respondent.**

**No. 15054.**

United States Court of Appeals Seventh Circuit.

Sept. 27, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leo N. McGuire, Atty., N. L. R. B., Washington, D. C., for petitioner.

D. Bailey Merrill, William E. Statham, Evansville, Ind., for respondent C. L. Frank, Inc., Merrill, Schroeder & Johnson, McCray, Clark, Statham & McCray, Evansville, Ind., of counsel.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board for enforcement of the Board's order issued against C. L. Frank, Inc., respondent. The order is based on the Board's findings and conclusions that the Company violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusal to bargain with the Union [1] and that such refusal was not based on any good faith doubt that the Union represented a majority of the employees involved; and that the Company violated Section 8(a) (1) of the Act by directing employees to conduct a poll with respect to the authorization of the Union

[1]. Chauffeurs, Teamsters and Helpers Local Union 215, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

as their bargaining representative, and by resolving the matter which had prompted the employees' interest in affiliating with the Union and announcing wage increases for the purpose of undermining employee support of the Union. The order directs the Company to cease and desist from the unfair labor practices found, and from in any like or related manner interfering with, restraining or coercing employees in the exercise of their statutory rights. Affirmatively, the order requires the Company to bargain with the Union upon request, and to post designated notices.

The Company is a small, family-held corporation engaged in the wholesale fruit and produce business at Evansville, Indiana. The employee unit involved consisted of eight employees who were truckdrivers, warehousemen and helpers. The Company's vice-president and general manager, James E. Wallace, is its principal operating executive and works closely with and is personally and familiarly acquainted with all the employees. The Board found no precedent instance of hostility to employee self-organization or anti-union animus. The Board found that Wallace, who had been unaware of any organizational activity, was "genuinely surprised" when on Monday morning, November 25, 1963, he became apprised of the Union's demand for recognition and for a meeting within 24 hours to open negotiations on a collective bargaining agreement. The demand was in the form of a letter from the Union under date of November 22, in which it was asserted that the Union "has been duly designated as collective bargaining representative by a majority of your employees" in the unit involved. Later that morning Wallace asked employee John Hall, who the Board characterizes as the leader in the organizational activity, whether Hall knew anything about the "union deal". Hall replied that the employees had all changed their minds. It appears that on November 19, 1963, Hall and three of his fellow workers had gone to the Union hall and obtained authorization cards and within two days, six of the employees had signed the cards. Three of the card signers, including Hall, testified that they changed their minds about having the Union represent them when the Union representative failed to appear at the plant on Monday morning as he had promised to do. Their expression of rejection and repudiation of the Union was corroborated by other employee testimony.

In the afternoon Wallace talked to all eight of the employees as a group in one of the workrooms of the plant. He inquired as to what they knew about the Union's assertion of the representation claim. He assured the employees that whatever the men decided was acceptable to him. In response to his inquiry as to what brought on the interest in union affiliation, Wallace was informed that "it wasn't so much a matter of wanting more money" but that the employees were discontented over the absence of direction of the work at the loading platform—the lack of direction with respect to the order of loading. Wallace inquired as to whom they wanted to direct the loading and designated the employee they requested, Harold Herron, to perform this function. He also advised the group that there was a ten cent an hour raise scheduled to go into effect on January 1, 1964. The raise had been determined some time before. It had been planned to make an announcement of the raise on the occasion of the annual Christmas party. Two of the employees, however, had been previously informed of the raise by Wallace. When Wallace left the group he requested the employees to determine whether or not they wanted the Union and to let him know. When the shift ended at 3 P.M. Wallace was advised by the employees that they had decided against the Union.

The Board bases its remedial order on its conclusions that Wallace's actions in designating Herron to direct the order of loading at the loading platform and announcing the pre-scheduled raises constituted unfair labor practices and served to dissipate the Union's majority in the

unit. But, in the factual context here involved, we are of the opinion that there is a lack of substantial evidence to support the Board's findings and conclusions in this respect. There is no evidence of anti-union animus or that Wallace expressed any preference that the employees remain unorganized. The evidence is all to the contrary. In view of the personal and familiar relationship which the Board found to exist there is no basis for concluding that Wallace was not justified in believing Hall's statement that the employees had changed their minds about wanting the Union. His request that the employees caucus and inform him of the result was a reasonable method of verifying what Hall had told him. And, in the context here involved the mention of the scheduled increase in wages and the resolution of the loading order directions matter are, if technical violations, so *de minimis* in nature as to afford no substantial basis for the Board's conclusions that they resulted in the dissipation of the Union's majority and warrant the remedy awarded.

Enforcement of the Board's order is denied.

Enforcement denied.